[Civ. No. 16400.   Second Dist., Div. Three.   Dec. 21, 1948.]

A. L. JUDELSON, Respondent, v. AMERICAN METAL BEARING CO. (a Corporation), Appellant.

John Moore Robinson and Robert M. Himrod for Appellant.

Bertram H. Ross for Respondent.

VALLÉE, J.—Appeal from a judgment for plaintiff against American Metal Bearing Co. of Texas, a corporation, in an action to recover compensation for services claimed to have been rendered by plaintiff's assignor as an attorney at law. American Metal Bearing Co. of Texas appealed.

The complaint is in three counts: (1) for the reasonable value of services rendered; (2) upon a book account; and (3) upon an account stated. It alleges in each count that at all times mentioned in the complaint defendant "American Metal Bearing Co." was and is a corporation with its principal place of business in Los Angeles. An answer was filed by "AMERICAN METAL BEARING CO. OF TEXAS, a corporation sued herein as AMERICAN METAL BEARING Co., a corporation." The answer was verified by Sidney A. Wyllis as president. It denied the allegation of the complaint as to the corporate existence and principal place of business of "American Metal Bearing Co."; denied that plaintiff's assignor ever rendered any services for American Metal Bear-

ing Co. of Texas; and denied that it ever had been or was indebted to plaintiff or to plaintiff's assignor. All other allegations of the complaint were also denied. The court specifically found that all allegations of the complaint were true.

Appellant contends that there is no evidence to support the findings. In our opinion the point is well taken.

The evidence, without conflict, is that American Metal Bearing Co. of Texas was incorporated in the State of Texas on December 7, 1945, with its principal place of business in Fort Worth, Texas. There is no evidence that it ever qualified to do business, or that it has ever done business, in the State of California. Plaintiff's assignor is one Granik, an attorney at law, practicing in the District of Columbia and in New York. The evidence is that on August 5, 1943, in Los Angeles, a Mr. Wyllis was introduced to Granik as owner and manager of American Metal Bearing Company. On that date Wyllis handed Granik a written document retaining him as general counsel with an initial retainer of $3,000, an agreement to pay him $2,400 a year for his expenses, payable $200 a month, and additional fees to be mutually agreed upon each month. The document is signed "AMERICAN METAL BEARINGS COMPANY By S. A. Wyllis Owner-Manager." Granik performed services until about November 1, 1945. All of his contacts during the performance of services were with Wyllis. Each month he billed "American Metal Bearing Company, Attention: Mr. S. A. Wyllis," at Los Angeles. Correspondence from Granik was addressed to "Mr. S. A. Wyllis, American Metal Bearing Company," at Los Angeles. Respondent introduced in evidence two letters addressed to Granik. One is signed "American Metal Bearing Co. S. A. Wyllis." The other is unsigned. There is typed thereon "American Metal Bearing Co.——S. A. Wyllis, Manager." Respondent also introduced in evidence three purchase orders of the United States Maritime Commission with bids. Two acceptance of orders are signed "American Metal Bearing Co. Per S. A. Wyllis." One acceptance of an order is signed "American Metal Bearing Co. Per S. A. Wyllis, Mgr." Two bids are signed "American Metal Bearing Co. 2277 East 16th Street Los Angeles, California (21) By S. A. Wyllis." Another bid is signed "American Metal Bearing Co. 2277 E. 16th St. Los Angeles, Calif. By S. A. Wyllis. Title. Owner-Manager." The record is not clear but apparently Granik was paid for all services performed to and including May, 1945. The agreement was terminated on January 8, 1946, by a letter reading

as follows: "S. A. Wyllis, Manager, I. Wyllis, Secretary, AMERICAN METAL BEARING Co.——Established 1921—Manufacturers and Re-Babbitters 2277 E. Sixteenth St.: Los Angeles 21, Calif. Jan. 8, 1946 Mr. Theodore Granik 1627 K St., NW Washington, D. C. Dear Sir: As we have not used your services since before V-J Day and can anticipate no future need for same, we would appreciate your returning to us any papers of ours you may have in your files. Thanking you for past favors, we remain Yours very truly, AMERICAN METAL BEARING Co. S. A. Wyllis SAW :hw."

Respondent did not make proof of the corporate existence of any corporation. He did not make any proof that any corporation named American Metal Bearing Co. had its principal place of business in Los Angeles. Appellant—American Metal Bearing Co. of Texas—introduced in evidence a certified copy of its articles of incorporation filed with the office of the Secretary of State of Texas on December 7, 1945. The only reasonable inference that may be drawn from the evidence is that one S. A. Wyllis, as owner and manager, was doing business in Los Angeles under the fictitious name of American Metal Bearing Co. during the period from August 5, 1943, to January 8, 1946, and that it was S. A. Wyllis who employed plaintiff's assignor and for whom he rendered services. No proof was made that appellant—American Metal Bearing Co. of Texas—was a continuation of the business of S. A. Wyllis doing business as American Metal Bearing Co. No proof was made of any connection between S. A. Wyllis, individually or doing business as American Metal Bearing Co., and appellant, other than the inference to be drawn from the fact that S. A. Wyllis verified the answer as president of appellant. No proof was made that appellant assumed or agreed to pay any of the obligations incurred by S. A. Wyllis, either individually or doing business as American Metal Bearing Co. So far as appears from the evidence there was never any connection between S. A. Wyllis, doing business as American Metal Bearing Co., and appellant. There is no evidence that appellant ever did business in the State of California. There is no evidence of any agreement, oral or written, between Granik and appellant. There is no evidence that Granik was ever employed by, or that he ever performed any service for, appellant. There is no evidence that there was any book account or account stated between Granik and appellant. There is no evidence that appellant ever became indebted to Granik. The only evidence in the record tends to show that Granik per-

formed services and expended money for Wyllis, owner and manager of and doing business as American Metal Bearing Co., located in Los Angeles.

■ A contract of a stockholder or member of a corporation individually, made before incorporation, is not the contract of the corporation nor binding on it, unless it expressly or impliedly ratifies it. (*Robinson* v. *Chapman Square, Inc.*, 77 Cal.App.2d 902 [176 P.2d 945]; *Chapman* v. *Sky L'Onda Mut. Water Co.*, 69 Cal.App.2d 667, 675, 676 [159 P.2d 988]; *Mack Realty Co.* v. *Beckley Hardware & Supply Co.*, 107 W. Va. 290 [148 S.E. 122, 125]; *Donoghue* v. *Indiana etc. R. Co.*, 87 Mich. 13 [49 N.W. 512, 513]; see, also, *General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284 [253 P. 137], where it was held that a corporation formed by members of a partnership was not a mere agency of the partnership for the purpose of more conveniently carrying on the partnership business and that an individual member of the partnership was not liable for obligations of the corporation.) There is no proof that Wyllis formed appellant corporation and thereafter transferred all of his assets to it for the purpose of evading his debts, if any, to plaintiff's assignor, a factual situation referred to in *Shea* v. *Leonis*, 14 Cal.2d 666, 669 [96 P.2d 332]. (See, also, *Koch* v. *Speedwell Motor Car Co.*, 24 Cal. App. 123, 126 [140 P. 598].)

The facts bring this case squarely within *Robinson* v. *Chapman Square, Inc.*, 77 Cal.App.2d 902 [176 P.2d 945]. In that case Kissinger entered into contracts with Robinson for the installation by him of sheet metal work in a number of buildings in Chapman Square. The contracts were signed by Kissinger's agent on January 24, 1944, by signing his own name without any designation as to whether he was acting as agent for any other person and, if so, for whom. The name of the defendant—Chapman Square, Inc.—did not appear on any of the contracts. On the same day—January 24, 1944—Chapman Square, Inc., was incorporated. Six months later Robinson received a letter from Chapman Square, Inc., signed by Kissinger, as president, notifying him that his services would not be required on the Chapman Square buildings. The action was for loss of profits on these buildings. The court held that there were no contracts between the litigating parties and that the facts did not establish liability of Chapman Square, Inc., for the loss, if any, suffered by Robinson. (See, also, *Morrison* v. *Bradley, Berdan & Co.*, 5 Cal. 503; *Berry* v. *San Francisco & N. P. R. R. Co.*, 50 Cal. 435, 437, where

it was held that a corporation cannot be made responsible for a trespass committed by individuals before it had an existence.) So here, there was no contract between the litigating parties and there is no evidence to establish liability of appellant for the services claimed to have been rendered by Granik.

Respondent argues that it is patent from the record that Wyllis used the defendant corporation "as an instrument of fraud to attempt to defeat respondent's rights in the premises and to perpetuate a fraud that he had originally committed on respondent's assignor, and is now seeking to avoid a just judgment through the instrumentality of a corporation that he elected to bring into the picture." His contention is that the doctrine of *alter ego* applies as between Wyllis and American Metal Bearing Co. of Texas, a corporation, in the sense that the act of Wyllis is to be considered in law the act of the corporation so as to make the corporation liable for the debts of Wyllis. There is no basis for the contention in the record. ■ A corporation which does not exist does not have any capacity of any kind. (*Oroville & V. R. R. Co.* v. *Plumas County,* 37 Cal. 354, 360.) It is elementary that the corporate entity and the natural persons who compose the corporation are not the same. ■ The corporation is an entity separate and distinct from the component persons even though under exceptional circumstances the corporation may be disregarded when it is only the double or *alter ego* of the persons composing it. (*California Emp. Com.* v. *Butte County etc. Assn.,* 25 Cal.2d 624, 636 [154 P.2d 892]; *Miller* v. *McColgan,* 17 Cal.2d 432, 436 [110 P.2d 419, 134 A.L.R. 1424]; *King* v. *New Masonic Temple Assn.,* 51 Cal.App.2d 512, 515 [125 P.2d 559].)

■ On proper proof that a corporation is but the instrumentality through which an individual, who is the sole owner of the corporate capital stock, for convenience, transacts his business, together with a showing that as a result of the double relationship fraud or injustice will inure to a third person, not only equity, looking through form to substance, but the law will hold the corporation bound as the owner of the corporation might be bound. It must be "upon a proper showing" that there is "unity of interest and ownership" which makes them one. (*Llewellyn Iron Wks.* v. *Abbott Kinney Co.,* 172 Cal. 210, 214 [155 P. 986]; *Wenban Estate, Inc.* v. *Hewlett,* 193 Cal. 675, 696 [227 P. 723].) ■ In such a situation "the law will have no compunction in holding the contract of the owner of the corporation dealing with the cor-

porate assets, to be the contract of the corporation. (*Porter* v. *Lassen County Land Co.*, 127 Cal. 261 [59 P. 563] ; *Schuyler* v. *Pantages*, 54 Cal.App. 83 [201 P. 137] ; *Swartz* v. *Burr*, 43 Cal.App. 442 [185 P. 411].)'' (*Wenban Estate, Inc.* v. *Hewlett*, 193 Cal. 675, 697 [227 P. 723].)

In order that the acts and obligations of a corporation be legally recognized as those of a particular person, and vice versa, the complaint must allege and it must be shown by the evidence, that the organization of the corporation is in some manner fraudulent or prompted by dishonesty, or that the corporation committed or intended to commit a fraud, or that injustice will be done if the corporate entity is not disregarded. (*Hollywood Cleaning & P. Co.* v. *Hollywood L. Service*, 217 Cal. 124, 129 [17 P.2d 709] ; *Minifie* v. *Rowley*, 187 Cal. 481, 487 [202 P. 673] ; *Erkenbrecher* v. *Grant*, 187 Cal. 7, 11 [200 P. 641] ; *Watson* v. *Commonwealth Ins. Co.*, 8 Cal.2d 61, 68 [63 P.2d 295] ; *Stark* v. *Coker*, 20 Cal.2d 839, 846 [129 P.2d 390] ; *California Emp. Com.* v. *Butte County etc. Assn.*, 25 Cal.2d 624, 636, 637 [154 P.2d 892] ; 13 Am. Jur. § 7, p. 160 ; 18 C.J.S. § 6, p. 376.)

Affirmative proof or direct inference from proof must be present to establish that there is such unity of interest and ownership as indicates a cessation of the individuality and separateness of the person and corporation. (*Llewellyn Iron Wks.* v. *Abbott Kinney Co.*, 172 Cal. 210, 214 [155 P. 986] ; *Estate of Greenwald*, 19 Cal.App.2d 291, 295 [65 P.2d 70].) The corporation must be treated as a separate entity until such proof is made. (*Relley* v. *Campbell*, 134 Cal. 175, 176 [66 P. 220].) The doctrine cannot be applied here for there is no pleading, and the record is devoid of any evidence, that appellant corporation was but the instrumentality through which Wyllis transacted his business or that he was the sole owner of all, or any, of appellant's capital stock or that appellant corporation was in effect the double of Wyllis.

Respondent also says that "appellant is estopped from challenging the judgment.'' A corporation formed by an individual which takes over the business of the individual and continues the business, paying the debts and conducting the business as before, may be estopped to set up a defense founded on the change as against one who continues to deal with the individual as before, and without any notice that what was formerly an individual had become a corporation with substantially the same name. (*Reid* v. *F. W. Kreling's Sons' Co.*, 125 Cal. 117, 118 [57 P. 773] ; see, also, *Gnarini*

v. *Banca Svizzera Americana,* 39 Cal.App. 200 [178 P. 532].)
In such a case the facts necessary to establish liability must
be pleaded and proved. (*North Hollywood M. Co.* v. *North
Amer. B. & M. Co.,* 137 Cal.App. 180, 186 [30 P.2d 446].)

Respondent lays great stress on the fact that Wyllis
verified the answer as president of American Metal Bearing
Company of Texas. The matter is of no consequence. A similar
set of facts was before the court in *Llewellyn Iron Wks.* v.
*Abbott Kinney Co.,* 172 Cal. 210 [155 P. 986], where it was
contended that under the facts there existing the doctrine of
estoppel should be applied. Prior to that case an action had
been brought by Llewellyn Iron Works against Venice Hotel
Co., a corporation, after its charter had been forfeited.
The Venice Hotel Company appeared and filed an answer,
verified by Abbott Kinney, its president. The plaintiff had
judgment. In the action against Abbott Kinney Company,
it was first held that the judgment in *Llewellyn Iron Wks.* v.
*Venice Hotel Co.* was invalid and void because of the prior
forfeiture of the charter. Llewellyn Iron Works contended
that Abbott Kinney Company was estopped from raising the
invalidity and voidness of the judgment in *Llewellyn Iron
Wks.* v. *Venice Hotel Co.* The Supreme Court answered the
contention (p. 212) : ''That estoppel, it is asserted, arises out
of the following undisputed facts. At the time that the de-
fendant in the action of *Llewellyn Iron Works* v. *Venice Hotel
Co.,* a corporation, filed its verified answer, Abbott Kinney,
himself, acting as and purporting to be and verifying the
complaint as, the president of the Venice Hotel Company
defendant, defended this action upon its merits, concealing
and failing to state a matter of the utmost importance to
the plaintiff, namely, that the corporation had ceased to
exist by virtue of the prior forfeiture of its charter, a fact
necessarily known to Abbott Kinney, its president, and un-
known to plaintiff; that it was the manifest duty of Abbott
Kinney, if he undertook to appear upon behalf of the defunct
corporation at all, to have pleaded the facts, in which case
the plaintiff would have been enabled to call in the trustees
of the corporation and to have prosecuted its action against
them (*Newhall* v. *Western Zinc Co., supra* [164 Cal. 380 (128
P. 1040)]) ; that Abbott Kinney deliberately refrained from
doing this, and to the contrary adopted a course of action
leading the plaintiff to believe that the defendant was an
existing corporation, and inducing the plaintiff to prosecute
its action against this corporation to final judgment. There-

fore, appellant argues Abbott Kinney is estopped from asserting the invalidity of this judgment. Still further, Abbott Kinney at this time was not only the president of the Venice Hotel Company, but he was also the president and principal stockholder of the defendant corporation which bears his name, and that corporation is chargeable with the knowledge which Abbott Kinney possessed and bound by the conduct of Abbott Kinney in the matter. To countenance this conduct would be to permit Abbott Kinney and the defendant corporation to escape the payment of a just debt, the validity of which was determined after litigation on the merits, by the concealment of a fact which it was incumbent on Abbott Kinney to disclose. . . .

''The second ground urged by respondent is that the findings do not touch the question of estoppel, and that the evidence is wholly insufficient to establish an estoppel against the defendant corporation. The findings do not touch the question of estoppel, nor, unfortunately for appellant's position, are the stipulated facts sufficient to raise this estoppel against the defendant. We entertain no doubt of their sufficiency to raise an estoppel against Abbott Kinney personally. And upon a proper showing that the Abbott Kinney Company, a corporation, was but the instrumentality through which Abbott Kinney for convenience transacted his business, by all of the authorities not only equity, looking through form to substance, but the law itself, would hold such a corporation bound as the owner of the corporation might be bound, or, conversely, hold the owner bound by acts which bound his corporation. [Citations.] But the evidence, however, is insufficient to establish this unity of interest and ownership, the only stipulation upon this matter being that 'Abbott Kinney was and now is the president of the Abbott Kinney Company, a corporation, and was and is the owner and holder of the greater portion of the stock of the said Abbott Kinney Company, a corporation.' A consideration of the authorities above cited will establish without the need of discussion the inadequacy of such a fact to accomplish the purpose here contended for, namely, the estoppel of a corporation by virtue of its president's knowledge and conduct in the matter of another corporation of which also he is president.''

    The fact that appellant appeared and defended the action does not estop it from challenging the judgment. It says, and respondent does not deny, that service of process was made upon an officer of appellant pursuant to section

406a of the Civil Code. It had a legal right to defend the action and resist the taking of judgment against it.

The existence of an estoppel in pais is a question of fact. When plaintiff's cause of action depends upon such estoppel, it must be pleaded in the complaint with sufficient accuracy to disclose the facts relied upon and the plaintiff must prove all of the elements constituting it. (*Silva* v. *Linneman,* 73 Cal.App.2d 971, 976 [167 P.2d 794]; *Fleishbein* v. *Western Auto S. Agency,* 19 Cal.App.2d 424, 427 [65 P.2d 928]; *General Motors Accept. Corp.* v. *Gandy,* 200 Cal. 284, 295 [253 P. 137]; 10 Cal.Jur. § 30, p. 654; 120 A.L.R. 10, and numerous California cases there cited; 1 So.Cal.L.Rev. 170, 171.) Here, plaintiff is seeking to recover from a foreign corporation upon a claimed liability which was created prior to the coming into being of the corporation upon the ground that the corporation is estopped from denying the liability. Hence, contrary to respondent's contention, his cause of action depends upon estoppel and the burden was upon him to allege and prove it. A further reason why this contention may not be upheld is that the court below did not find an estoppel or base its decision thereon. (*Corporation of America* v. *Durham etc. Co.,* 50 Cal.App.2d 337, 342 [123 P.2d 81].) The facts in this record only go so far as to estop appellant from claiming that it was not properly named in the complaint. (*Butterfield* v. *Graves,* 138 Cal. 155 [71 P. 510].) It does not make any such claim.

Plaintiff's right to maintain the action is dependent upon an assignment to him by Granik. It should be observed that the assignment, received in evidence, is not an assignment of a claim against appellant—American Metal Bearing Co. of Texas.

Judgment reversed.

Shinn, P. J., and Wood, J., concurred.